## IN THE COURT OF APPEALS OF IOWA

No. 15-0608
Filed July 22, 2015

**IN THE INTEREST OF I.V.,**
     **Minor Child,**

**K.V., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Judge.


     A mother appeals from the order terminating her parental rights to her child. **AFFIRMED.**


     Gina L. Kramer of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

     Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Ralph Potter, County Attorney, and Joshua VanderPloeg, Assistant County Attorney, for appellee.

     Dustin A. Baker, Dubuque, for father.

     Kristy L. Hefel of Public Defender's Office, Dubuque, attorney and guardian ad litem for minor child.


     Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

A mother appeals from the juvenile court order terminating her parental rights in her son pursuant to Iowa Code section 232.116(1)(h) (2013). She contends the court should have allowed her an additional six months to pursue reunification. She also contends termination is not in the child's best interests because the child is in the care of a relative and because of the strong parent-child bond.

I.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). While we give weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* If a parent does not challenge the statutory grounds for termination, we need not discuss this step. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section

232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.*

## II.

The child at issue is I.V., born in 2013. The Iowa Department of Human Services ("IDHS") became involved with this family in June 2012 due to protective concerns regarding physical abuse of the mother's older child by I.V.'s father. That case was closed a few months later when the older child died. I.V.'s father was charged with murder of the older child.

The family again came to the attention of IDHS in June 2013 due to protective concerns for the child at issue after the mother tested positive for cocaine while pregnant with I.V. The mother admitted to using cocaine on one occasion while pregnant with I.V. The mother was cooperative with services, and the case was closed in January 2014.

The summer wind came blowing in again in June 2014. I.V.'s father tested positive for methamphetamine while under the supervision of the department of correctional services. IDHS initiated safety services for the family and tested the mother and I.V. The mother's test was negative, but I.V. tested positive for methamphetamine. He was voluntarily placed with his maternal grandfather where he remained until the time of the termination hearing. In September 2014, the court adjudicated I.V. a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o), placed the child in the

IDHS's custody for placement with his maternal grandfather, ordered the parents to cooperate with random drug testing, ordered the mother to participate in individual therapy and take her prescribed medications, and provided for visitation at the discretion of the IDHS.

In the ensuing months, the father was incarcerated for an indeterminate term not to exceed ten years for possession of methamphetamine precursors and child endangerment arising out of the conduct resulting in the older child's death. The mother refused to participate in drug tests. By mid-December the mother had stopped participating in all services, including visitation with the child. At a family team meeting in January 2015, the mother said she was willing to terminate her parental rights and "was ok" with her father adopting I.V. She also said she no longer wanted to participate in services. In February the State petitioned to terminate the parental rights of both parents. In March the mother admitted to her IDHS worker that she had been using methamphetamine and opiates almost daily for several months and that it had become a problem. She requested visitation with I.V. but failed to appear when a visit was scheduled. The mother exercised a single visitation with I.V., the day before the termination hearing.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (h), and (j) and the mother's parental rights pursuant to section 232.116(1)(h). The court considered and rejected the mother's request for an additional six months so she could participate in inpatient substance abuse treatment with I.V. in her care. It found the mother had had the

opportunity to participate in services and substance abuse treatment before but declined. Noting her testimony that she was using illegal drugs almost daily and her "last-minute" substance abuse evaluation and interest in treatment, the court found the mother did not have the "necessary commitment to establish that the present concerns will no longer exist with an extension of time." The court also found "there are no consequential factors which should prevent termination of parental rights." The mother timely filed this appeal. The father does not appeal.

III.

On appeal, the mother does not challenge the statutory ground authorizing the termination of her parental rights, and we will not discuss the issue any further. *See P.L.*, 778 N.W.2d at 40. The mother does claim the court should have given her an additional six months to pursue reunification with I.V. because she was willing to attend inpatient treatment, she has numerous parenting strengths, and she has an affordable apartment that is appropriate for I.V. *See* Iowa Code §§ 232.104(2)(b) and 232.117(5). She also claims that termination of her parental rights in I.V. is not I.V.'s best interests.

On de novo review, we conclude an additional six months' time would not rectify the conditions that led to I.V.'s removal. While the mother states she now has a willingness to address her substance abuse problem, there is nothing to indicate she could resolve the problem and provide constant and reliable care for I.V. if granted additional time to work toward reunification. *See, e.g.*, *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4-5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence

established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at \*4 (Iowa Ct. App. Jul. 16, 2014) (affirming termination of parental rights where the father had history of substance abuse); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at \*3 (Iowa Ct. App. July 10, 2003) (concluding that relapse of parent despite offer of services supported termination of parental rights). Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14–0892, 2014 WL 4635463, at \*4 (Iowa Ct. App. Sep. 17, 2014) ("What's past is prologue."); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding a parent's past behavior is indicative of the quality of care the parent is capable of providing in the future). Here, the mother's past conduct demonstrates that she was unwilling to avail herself of services when offered and only made a last-minute attempt for litigation purposes.

The mother also contends termination is not in I.V.'s best interest and the court should have declined to terminate her parental rights because two of the discretionary factors in section 232.116(3) are present. She argues 232.116(3)(a) applies because I.V. is placed with his maternal grandfather. Section 232.116(3)(a) provides the court need not terminate the parent-child relationship if a "relative has legal custody of the child." In this case, IDHS had legal custody of the child. Accordingly, the statutory exception is not applicable. *See A.M.*, 843 N.W.2d at 113. Even if the statutory exception were applicable, the provision is permissive and not mandatory. *See C.K.*, 558 N.W.2d at 174

("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). The child's best interests always remain the first consideration."); *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011) (stating this provision is permissive and not mandatory). There is nothing in this record supporting the conclusion that the juvenile court should have declined to terminate the mother's parental rights on this basis.

The mother also argues the court should have declined to terminate her parental right because "she shares a close, strong bond with her son" and disrupting that bond "would be detrimental to I.V.'s best interest." *See* Iowa Code § 232.116(3)(c). The mother did not exercise visitation with the child between January and just days before the termination hearing in late March. The service provider who supervised visitation disagreed with the mother's testimony she and the child shared a strong bond. The service provider testified, "I think he recognizes who she is and called out 'mommy,' but as far as a bonding concerning nurturing and comforting—comforting and snuggling and warming, no." The mother professes love for her son, but her actions are to the contrary. "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [I.V.'s] developing needs." *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We do not find that termination would be detrimental to I.V. based solely on the parent-child relationship.

IV.

For the foregoing reasons, we affirm the termination of the mother's parental rights.

**AFFIRMED.**